[1] Reported in 288 N.W. 706.
On October 14, 1938, the city of Minneapolis applied to the district court of Hennepin county for a determination of the settlement of Claus Olaf Hanson (hereafter called Olaf Hanson) and Julia Hanson, his wife, together with their eight children. Joined as interested parties were the county of Beltrami; the city of Moorhead; Morken, Moland, Spring Prairie, and Glyndon townships in Clay county; and Richwood, Sugarbush, and Detroit townships in Becker county. A separate answer was filed by Moland township, and the matter came on for hearing before the aforementioned court, which made findings of fact and conclusions of law to the effect that the legal settlement of the Hansons for relief purposes was and is in Moland township.
Reference to a few undisputed facts will aid in understanding appellant's contentions. In November, 1931, Olaf Hanson and *Page 373 
family applied to Moland township for relief. Their settlement for poor relief purposes at that time was in Moland township. During the following two years the Hansons and their children lived in Moorhead, where they received public relief every month from the poor fund of the aforesaid township. From November, 1933, until March, 1937, they lived in various townships in Becker county, Minnesota, when they moved to Hennepin county, their present abode.
3 Mason Minn. St. 1938 Supp. § 3161, provides:
"Every person, except those hereinafter mentioned, who has resided one year continuously in any county, shall be deemed to have a settlement therein, if it has the county system; if it has the town system, he shall have a settlement in the town, city or village therein in which he has longest resided within such year. * * * each month during which he has received relief from the poor fund of any county or municipality or from fundssupplied by the State of Minnesota or the United States or anydepartment or departments thereof, supplied as direct relief orin providing work on a relief basis and in lieu of directrelief shall be excluded in determining the time of residence hereunder, * * *."
That part of the above quoted statute which is not italicized has been in force during all times here involved; that part of the section which is italicized was added by amendment which became law on January 24, 1936.
So far as we are now concerned, the trial court was faced only with the problem of determining whether the Hansons acquired a settlement in Becker county within the meaning of the above quoted statute. In this respect it made the following findings of fact:
"5. The family received public relief from the poor fund of and were supported by Moland township in Clay county continuously from their coming into Becker county in November, 1933, to and including the month of May, 1935.
"6. During the months of June, July, and August, 1935, Olaf Hanson, and at times the oldest son, Otto, were employed by *Page 374 
Becker county doing road work and received in payment therefor work relief from funds other than the poor fund. Olaf Hanson was of poor health and not capable of manual labor, wherefore Otto Hanson, the oldest son, was on October 1, 1935, certified to WPA where he worked until the latter part of March, 1937, turning over to his parents all checks and payments for said work for the support and maintenance of the family with whom he lived.
"7. That the longest period during which Olaf Hanson and family resided in Becker county without receiving any relief from any poor fund was seven months and twenty-six days between June 1, 1935, to the 26th day of January, 1936.
* * * * *
"11. That at the time that the son Otto Hanson worked on WPA from October 1, 1935, to March 31, 1937, said Otto Hanson was a minor, not emancipated; that his parents were entitled to his wages which were turned over to the mother and were by her used for maintenance of the said family."
The trial court concluded that the Hansons did not acquire settlement in Becker county for purposes of relief.
Numerous assignments of error are made by appellant. The contentions seriously pressed by it are to the effect that (1) the Hansons did not receive public relief as found by the trial court in finding of fact No. 5 above because the township of Moland was under no obligation to pay for the goods and services used by the Hansons during that period, and therefore the only months to be tolled for purposes of determining settlement are those in which the bills for these services and goods were paid by said township; and (2) that the work received by Otto on WPA as found by the trial court should not be regarded as work on a relief basis and in lieu of direct relief within the meaning of the above quoted amendment to § 3161 so as to prevent the counting of those months when work was had and wages received by Otto toward the 12 months required for acquisition of settlement for purposes of relief. *Page 375 
1. With respect to appellant's first contention, the evidence is undisputed that the Hansons lived in a certain house in Becker county from November 1, 1933 (the time when they came into that county) to April or May of the next spring, and that the rent was paid in advance out of the poor fund of Moland township; that they were supplied with groceries from January, 1934, to November, 1934, by Floyd Lidstrom, who had been authorized in advance so to do by a letter from Charles Gilberry, chairman of the board of supervisors of Moland township, and who was paid therefor from the poor fund of that township in accordance with warrants dated February 21, May 16, July 6, October 22, and December 8, all in 1934; that they were supplied with groceries during each month from January to May, inclusive, 1935, by J.J. Beck, who had been authorized in advance so to do by a telephone message from the aforementioned Gilberry and who was paid from the poor fund of that township in accordance with warrants dated November 4 and March — both in 1935.
Appellant argues that by the terms of 1 Mason Minn. St. 1927, § 3184, town boards in counties such as Clay, which has the township system of caring for the poor, are superintendents of the poor; that Mr. Gilberry had no power to authorize anyone to supply goods or services to the Hansons; that the goods and services were for that reason supplied without the happening of conditions which would make Moland township liable for payment; that, such being the case, the only months to be tolled are those in which payment was made. In support of this argument, there is cited In re Settlement of Youngquist, 203 Minn. 530,282 N.W. 272.
While Gilberry did not have power to authorize the supplying of goods and services, we are of the opinion that his attempt to do so was ratified by the township when the warrants were paid. The acquiescence of the township in the act of the supervisor's chairman, of which the other supervisors must have shortly thereafter known, amounts to an approval of what Gilberry did, making his act that of the board. The ratification related back to the act and is equivalent to prior authority. *Page 376 
1 Dunnell, Minn. Dig. (2 ed. 1932 Supp.) § 191, note 72. We are further of the opinion that the months to be tolled in cases such as this are those during which the goods and services were actually supplied. Since the act of Gilberry became that of the town board thereby authorizing the persons supplying the goods and services so to do, the township was liable for payment for the groceries as they were delivered to the Hansons. Groceries were so delivered in every month from January, 1934, to and including May, 1935. We regard this as relief from the poor fund of Moland township during each month when the groceries were supplied. The same can be said for the house rent. While the amount was paid in advance and the rent was not by the month but for the entire winter, the practical effect of the arrangement was to give the Hansons a home to live in during every month from November, 1933, to May, 1934. It would be overly technical and highly impractical to say that the only month during which relief was received was that one in which the rent was paid. In re Settlement of Youngquist, 203 Minn. 530,282 N.W. 272, relied on by appellant, is not in point because in that case no person acting as agent of the county involved purported to authorize the expenditure which was subsequently paid. Ratification is only effectual when the unauthorized act was done by a person professedly acting as agent of the person or body sought to be charged as principal. 1 Dunnell, Minn. Dig. (2 ed.) § 179, note 37.
2. The issue presented by appellant's second contention can be thus framed: Did the work received by Otto Hanson, minor son of Olaf Hanson, on WPA, constitute, as to the Hanson family, work on a relief basis and in lieu of direct relief? We are of the opinion that, in light of the evidence presented to the trial court, it was justified in finding affirmatively on that question. Otto was certified to WPA by the county relief office of Becker county. Section "C" of an instruction manual entitled: "Handbook For County Relief Workers on the Certification of Eligibility for Employment," which, according to the testimony adduced, is and *Page 377 
was in 1935 the rule book observed by relief officers certifying persons on relief for WPA work, provides:
"Persons eligible for employment on projects authorized under the Emergency Relief Appropriation Act of 1935 are those registered with the employment offices designated by the United States Employment Service and who have been certified by the Emergency Relief Administrations as having received emergency relief from public funds during May, 1935, and whose certifications have not been cancelled * * *.
"3. Not more than one member of a family group drawn from the relief rolls may be employed simultaneously on work projects, except by the specific authorization of the Works Progress Administration."
Mr. James H. McManmon, supervisor of finance district WPA, testified that before granting work relief on WPA the entire family of the applicant is considered. Mr. A.W. Hoghaug, secretary of the welfare board of Becker county, testified, with reference to the certification of Otto Hanson to WPA rolls, that it is customary to certify a person other than the father as the relief head of a family where the father is unemployable and that the original understanding in such cases would be that the person employed would be discharged if his wages did not go to support the family. From the form by which Otto was certified, it is to be inferred that he was considered as the acting head of the Hanson family. Mrs. Hanson, mother of Otto and wife of Olaf, testified that her son turned his WPA pay check over to her every month and that she used it for the expenses of the family.
On the basis of these facts, we think that the trial court was right in finding (a) that Otto Hanson was given WPA work as the representative of the Hanson family and (b) that the work given to Otto, under the circumstances of his case, constituted work on a relief basis within the meaning of § 3161. It follows that the trial court properly concluded that the months during which Otto received payments from WPA were not to be counted in determining whether the Hansons acquired a settlement for *Page 378 
purposes of poor relief in Becker county. See Treasurer and Receiver General v. Town of Dedham (Mass.) 15 N.E.2d 252. The case of In re Settlement of Blackwell, 205 Minn. 262,285 N.W. 613, held only that the mere mention of WPA does not require a finding that relief was given so as to stop the running of the period of settlement, and is for that reason clearly distinguishable. See In re Settlement of Wrobleski,204 Minn. 264, 283 N.W. 399, 120 A.L.R. 618.
Appellant also contends that certain other relief given to the Hansons while in Becker county should not be considered such as to stop the running of the period for settlement. Suffice to say that we approve the finding of the trial court in the respects challenged.
Numerous other assignments of error are to be found in appellant's brief, but those which were merely listed will not be considered.
Affirmed.