IN RE SETTLEMENT OF AMEN CRAMER AND OTHERS.
COUNTY OF MARSHALL v. COUNTY OF ANOKA.[1]

February 27, 1942.

No. 32,964.

*Allen S. Chambers* and *Charles P. LeRicheux,* for appellant.
*A. A. Trost,* for respondent.

[1]Reported in 2 N. W. (2d) 816.

HOLT, JUSTICE.

Proceeding to determine the place of settlement for poor relief of Amen Cramer, his wife, minor children, and a grandchild. Findings of fact and conclusions of law were made and filed against appellant. It moved for amended findings or a new trial, and appeals from the order denying the same.

The facts: Up until the tenth of September 1937 Amen Cramer, a tenant farmer, resided with his wife and children mentioned in Marshall county, this state. On the date mentioned, he moved to an 80-acre farm in Anoka county, which he bought on August 14, 1937, paying two dollars on an earnest money contract, agreeing to pay in all $1,200 therefor in the following manner: $98 on September 15, 1937, the sum of $100 December 1, 1938, and $100 each year thereafter. A more formal contract for deed on the terms stated was entered into on October 1, 1937, running to Cramer and his wife as vendees. Cramer and family remained in possession of said farm until the contract for deed was cancelled for default in its conditions by notice served on the vendees January 10, 1941, effective 30 days after the date of service. On January 11, 1941, Cramer and his family were removed by the sheriff of Anoka county to the county of Marshall. Thereupon this proceeding was brought by Marshall county.

On April 4, 1938, Cramer made application to the rural rehabilitation division of the resettlement administration of the United States for financial assistance. The application was then turned down, but after a hailstorm in the summer destroyed the growing crops Cramer received from said division $20 in each of the months of September, October, November, and December 1938, and $35 in each of the months of January and February 1939. These grants of money so made were not made from the poor fund of any county or municipality or from funds supplied by the state of Minnesota or the United States, or any department thereof, supplied as direct relief or in providing work on a relief basis, but represented grants made for the purpose of rehabilitating Cramer as a farmer. The foregoing is in substance the finding of the trial

court which is challenged by the appeal. To that finding the court adds "that the evidence fails to show that at the times the grants so made were paid said Amen Cramer or his family were paupers or poor persons within the meaning and intent of the poor laws of the state of Minnesota."

If the above findings are correct, the order denying the motion of Anoka county for a new trial should be affirmed; otherwise reversed.

The evidence not contradicted is that when Cramer moved on to this farm in Anoka county he had nine cows, one bull, and, subject to a chattel mortgage of $178, two teams of horses. That after his crops were destroyed by hail in the summer of 1938 he again requested financial aid from the resettlement administration and was then granted such aid as above found by the court, which Cramer testified was for the purpose of buying feed for his stock; that it was so used and that he then had enough to supply the wants of himself and family without assistance. That testimony sustains the above quoted part of the findings.

If the aid received from the rehabilitation division of the resettlement administration is not to be considered direct relief under our poor relief law in force prior to 1939, Cramer and his family had gained a settlement for poor relief by one year's residence beginning September 10, 1937, in Anoka county. We think the aid furnished Cramer in the months of September 1938 through to January 1939 by the resettlement administration is not such aid as comes within this provision of our statute:

"Each month during which he [the pauper] has received relief from the poor fund of any county or municipality or from funds supplied by the State of Minnesota or the United States or any department or departments thereof, supplied as direct relief or in providing work on a relief basis and in lieu of direct relief shall be excluded in determining the time of residence hereunder." L. 1937, c. 138 (Mason St. 1938 Supp. § 3161).

The evidence does not show that the aid received was 'supplied by the resettlement administration as direct relief or in providing

work on relief basis and in lieu of direct relief. Appellant, we think, rightly contends that the grant Cramer obtained from the resettlement administration came from § 1(3) of c. 554, 52 St. 809 (15 USCA, §§ 721-728, p. 807, § 1[3]), appropriating $175,000,000 to the secretary of agriculture available for "loans, relief, and rural rehabilitation for needy persons." To receive money from that source, the recipient need not be a destitute person within the definition of our poor laws. The application Cramer made to the resettlement administration (now called farm security administration) was upon its blank designated as "Application for Rehabilitation," signed by Cramer and dated April 4, 1938. The trial court in the memorandum made a part of its order denying a new trial says:

"The application was not granted until September, 1938. It seems clear from the evidence that the impelling reason for granting the application was the fact that Mr. Cramer's crops suffered from hail during the summer. Certainly grants made for feed and hay for livestock cannot be considered as direct relief. * * * it hardly seems possible that grants made by the Resettlement Administration could, under any circumstances, take the place of direct relief to paupers. * * * In most cases the Farm Security Administration [resettlement administration] grants a loan and it is only in cases of special emergency that an outright grant is made and that is usually based on some temporary emergency such as hail, drouth, flood and so forth. * * * Clear it is that the Cramers were able to get along several months after they made their application, apparently without any help, and it was only after their crops had been hailed out that it became necessary for them to have help."

We considered working on a WPA project away from the home of a poor person did not constitute direct relief that excluded the time he so worked from being considered a part of his residence in the place where he and his family resided. In re Settlement of Blackwell, 205 Minn. 262, 285 N. W. 613.

Appellant cites In re Settlement of Hanson, 206 Minn. 371, 288 N. W. 706; In re Settlement of Wrobleski, 204 Minn. 264, 283 N. W. 399, 120 A. L. R. 618; In re Settlement of Venteicher, 202 Minn. 331, 278 N. W. 581; In re Settlement of Johnson, 189 Minn. 161, 248 N. W. 710; and County of Redwood v. City of Minneapolis, 126 Minn. 512, 148 N. W. 469. In none of the cited cases did the court decide whether persons involved had received financial aid under the act of congress here involved, nor whether they were poor persons within the poor laws of this state.

The order is affirmed.