84 So.2d 906 (1956)
John B. FRUCHTL, as a Freeholder and Citizen and Taxpayer of the City of Ormond Beach, a Municipal Corporation, under the laws of the State of Florida, Appellant,
v.
Leo F. FOLEY and Margaret Foley, his wife, John B. Sterthaus, Jos. R. Ellicott, Jr., City of Ormond Beach, a municipal corporation, under the laws of the State of Florida, E.W. Russell, Jr., Anna Mae Russell, Appellees.
Supreme Court of Florida. Division B.
January 25, 1956.
*907 John B. Fruchtl, in pro. per.
Alex D. Littlefield, Jr., Daytona Beach, for Leo F. Foley and Margaret Foley.
Raymond, Wilson & Karl, Daytona Beach, for E.W. Russell and Anna Mae Russell.
J. Compton French (of Hull, Landis, Graham & French), Daytona Beach, for appellees.
THOMAS, Justice.
The appellant, a citizen and taxpayer of the City of Ormond Beach lost his suit to have the court declare that certain conveyances and mortgages affecting the title to property in the city were void; to have the court declare that the appellees-Foley and-Russell had no right, or title to the property, and so on. The plaintiff's motion for summary decree was denied; Foley's motion for summary decree was granted. The plaintiff is, therefore, appellant here and the defendants are appellees.
We will frequently refer to the land in question as "Block 24."
In the year 1946 state and city taxes on certain lands in the city, including Block 24, had not been paid and tax certificates had been issued. The mayor and other city officials undertook to interest private persons in buying the property so it could be placed on the tax roll and produce revenue by taxation. Eventually the appellee, Leo F. Foley, and the mayor of the city entered into an arrangement under which the city was to foreclose the certificates we have mentioned and Mr. Foley was to advance $1,550 to assure a bid for that amount when litigation instituted by the city should culminate in the sale of the property by a master. According to a letter addressed by Mr. Foley to the mayor, transmitting the check for $1,550, the suit was to be started immediately. The city, in compliance with the arrangement, commenced a foreclosure proceeding and prosecuted it to a final decree and sale. All the property, except Block 24, was purchased at the master's sale for $1,400 by appellee-Foley, who had, meanwhile, been requested by the city attorney to omit Block 24 from his bid because that tract might be needed for a veteran's project which the city was then sponsoring. The city attorney represented that if it later appeared that the city would not have use for Block 24, the city would convey the property to Mr. Foley for the amount of the city's outlay in obtaining it at the sale plus such costs as the city might incur in holding it between the date of purchase and the eventual transfer to Mr. Foley. Mr. Foley paid into court the amount of his bid and the city evidently returned to him his check for $1,550.
For more than four years the city held the property and in the meantime Mr. Foley was elected to the position of Zone Manager, in November 1951, and the office of mayor, in January 1952. Afterwards, in July 1952, the Zone Managers decided that Block 24 would not be incorporated in the veteran's project. Two months later the entire matter was presented in an open meeting of the Board of Managers and a resolution, setting out a history of the dealings with reference to Block 24 and authorizing the sale of the block to Mr. Foley for the amount bid for the block by the city, plus city taxes and taxes assessed by Volusia County, totaling $346.77, was adopted. On 28 October 1953 the land was conveyed by appellee-Foley and other officials of the city to Foley, pursuant to the resolution.
The pivotal point is the propriety of the dealings between the city and its mayor. When Mr. Foley bid $1,400 for the property, excluding Block 24, he kept his bargain and presumably that amount was approved by the court as a fair price for the lots he got; when the bid was made and the *908 original check was returned to him that particular phase of the transaction was closed.
There remained the agreement between the city attorney and Mr. Foley that Block 24 would be conveyed to him at cost if not eventually required in the housing project. This arrangement, entered into at a time when Mr. Foley occupied no position of power and trust in the city government, is advanced as cause for approving the deed conveying the block to him on the theory that negotiations with a city begun by a person in his private capacity may be consummated after he becomes an official. We cannot subscribe to the soundness of the position under the circumstances of this case for many reasons. The so-called agreement with reference to Block 24 had no efficacy. A city cannot be bound to convey its property, or become obligated to dispose of property it may obtain, in such an informal manner. The city attorney, whose duties are defined in the city charter, had no power to commit the city to the transfer of Block 24.
Under the charter, Sec. 23 of Chapter 15401, infra, the city attorney acts as legal advisor, prepares instruments affecting the municipality, prosecutes in the Municipal Court and represents, when required by resolution of the City Board of Managers, the city in suits and controversies. So his duties are those usually performed by city attorneys. The following section of the charter carries the title "Other Duties" and in that section it is provided that in addition to the duties imposed by Sec. 23 "he shall perform such other professional duties as may be required of him by ordinance or resolution of the City Board of Managers, or as prescribed for City Attorneys under the general laws of the State and which are not inconsistent with this Act and with any ordinance or resolution which may be passed by the City Board of Managers." (Italics supplied.)
Clearly the city attorney was not functioning under Sec. 23, supra, in his negotiations with Mr. Foley and he was not authorized by ordinance or resolution to act beyond that field, although he had apparently received oral instructions to make the representation to Mr. Foley about Block 24.
The appellees contend that the eventual resolution of the Board of Managers setting out the history of the dealings with Mr. Foley and authorizing a deed conveying to him Block 24 for the amount of the city's outlay constituted a "completion" and "furtherance" of an agreement between him and the city. We cannot accept the argument that what was subsequently done raised the arrangement to the dignity of a contract and we cannot agree that the resolution to make the transfer amounted to a ratification of the city attorney's purported commitment.
Under the charter of the city, Chapter 15401, Laws of Florida, Special Acts of 1931, the legislative body of the City is the Board of Managers composed of Zone Managers. As members of the Board of Managers they exercise power collectively and as Zone Managers they exercise power individually in their respective zones. The Board of Managers elect a mayor from their number. When he entered into the arrangement with the city attorney, Mr. Foley held no official position, so no odium could attach to his negotiating with the city attorney with reference to Block 24. Obviously the city attorney was attempting in good faith to carry out the wishes of the Board of Managers. But the primary question is one of power.
At the time the city decided that Block 24 was no longer needed in the housing project and at the time of the final resolution authorizing its transfer, Mr. Foley was not only a member of the board but mayor of the city and he signed the deed in that capacity to himself.
The policy that a city official may not be advantaged personally by dealing with the city he serves is plainly recorded in an amendment of the city charter: "Officers * * * shall not be interested in the profits or emoluments of any contract, work, or service for the municipality and *909 any such contract in which any officer or employee is or may become interested shall be void." Sec. 10, Chapter 18750, Laws of Florida, Special Acts of 1937.
We recognized the principle in City of Stuart v. Green, 156 Fla. 551, 23 So.2d 831, and held then that a forbidden contract could not be ratified. The principle harks back to the admonition that "No man can serve two masters * * *." Matthew VI, 24.
Even if we assume that the original arrangement between the city attorney and Mr. Foley was not from its very nature void or "forbidden," but was only voidable because unauthorized, the subsequent attempt to ratify cannot be approved because of the change in his status, for "ratification [relates] back to the act and is equivalent to prior authority." City of Minneapolis v. County of Beltrami, 206 Minn. 371, 288 N.W. 706, 708.
We have no doubt that had Mr. Foley been mayor and member of the Board of Managers during the original negotiations between him and the city attorney, any agreement they reached would have been void because opposed to public policy as well as the express prohibition in the charter. And we think that when the Board of Managers undertook to ratify what was attempted to be accomplished by Mr. Foley and the city attorney, at a time when the former was officially taking part, after he had evidently participated in the decision that the property in question was not to be used by the city and would, therefore, become available to him, this action became infected for the same reason and cannot be sanctioned.
At the time of the attempted ratification, the property had become an asset of the city and Mr. Foley was prohibited then from dealing with it to his profit. That a handsome profit would come to him is plain from the record.
Although the resolution authorizing the conveyance sets out the three items for which the city was to be reimbursed  the bid of the city for Block 24, city taxes for 1949, 1950 and 1951, and money paid to redeem from county taxes, the amount of each item does not appear. However, elsewhere in the record it appears that the sum of city taxes was computed as $257.38, the taxes paid Volusia County amounted to $89.39, and the city had paid for Block 24 at the master's sale $130. So the city's outlay was $476.77.
The deed from Mr. Foley to appellees-Russell was dated the day before the deed from the city to him. There were twenty-six lots in Block 24 and he sold ten of them to the Russells for $3,000. According to a stipulation filed in this case $383.58 was paid in cash covering city taxes, in the sum of $257.38, county taxes, in the sum of $89.39, and closing costs of $36.81. A mortgage was given by appellees-Russell to Mr. Foley and wife for $2,650 and on this was immediately credited a payment of $33.58. We can find no information in the record about reimbursement of the city for the amount of $130 paid by the city for Block 24.
In summary, the arrangement between the city attorney and Mr. Foley lacked vitality for the reasons we have given, and it could not be vitalized by actions of the Board of Managers in which Mr. Foley, by then disqualified to profit in dealings with the city, participated.
In justice to the parties involved, it should be said that there is no evidence that any action by any of them was not open and aboveboard. Our decision is inspired by the jealousy with which this and other courts circumscribe the dealings between an officer of a municipality, acting in his own behalf, and the municipality he serves.
Reversed.
DREW, C.J., and ROBERTS and O'CONNELL, JJ., concur.