ROLAND EDWARDS v. MELVIN METTLER
AND OTHERS.

129 N. W. (2d) 805.

July 17, 1964—No. 38,898.

*Gordon Rosenmeier* and *John E. Simonett,* for appellant.

*Peterson & Popovich, Peter S. Popovich,* and *James E. Knutson,* for respondents.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the district court denying plaintiff's motion for amended findings or, in the alternative, for a new trial.

This case is an outgrowth of the attempt to find a solution for the educational problems of the Unorganized Territory of Cass County and is illustrative of the bitterness that has been engendered by the attempt on the part of some of the people to join existing school districts and of others to build and maintain their own schools. The action was brought by plaintiff as a resident and voter of the Unorganized Territory, a freeholder, and taxpayer, and purports to be brought in his own behalf and in behalf of all residents and taxpayers within the Unorganized Territory and for the benefit of such territory. Inasmuch as the trial court has held that he was a proper party to bring the action, we will pass that issue without further comment.

During the school years 1955-1956, 1956-1957, and 1957-1958, children of high school age in the northern part of the Unorganized Territory, which is referred to as the Bena area, were accepted by Independent School District No. 115, having its school in Cass Lake, and were educated there. During this time the Unorganized Territory maintained three small secondary schools at Boy River, Longville, and Hackensack. Prior to 1955, the children of high school age within the area involved here had attended the secondary school at Boy River,

which consisted of three classrooms used for the secondary school and had a total of three teachers conducting the entire high school courses. The courses offered at Boy River met the minimum requirements of the State Department of Education but did not contain some of the courses offered at Cass Lake, including home economics, industrial arts, physical education, and others. As a result, many of the parents preferred to have their children go to high school at Cass Lake, where they would receive a broader and more complete education.

During the years involved, the Board of Education of the Unorganized Territory of Cass County consisted of Melvin Mettler, who was appointed as chairman of the board in October 1955 and later elected by the voters; Harold E. Hanson, who was clerk of the board and also county superintendent of schools; and Paul Jewell, who was the county treasurer and served ex officio as a member of the board. Mettler was in favor of joining the Cass Lake district and also of having the children attend there in the absence of a consolidation with that district; Hanson was opposed to having the children attend the Cass Lake school; and Jewell would take no position on this issue. The Cass Lake school board passed resolutions offering to accept these children, and during the school year 1955-1956, 41 students of the Unorganized Territory attended the Cass Lake school; 37 in the year 1956-1957; and 21 in 1957-1958. No formal written contract was entered into between the Unorganized Territory and the Cass Lake district until 1959, when the board had been enlarged and had changed by the defeat of Hanson so that a majority favored entering into such contract.

During the years here involved, an impasse was reached between Mettler and Hanson, with Jewell refusing to take any action either way. At a regular meeting of the board of the Unorganized Territory on January 10, 1956, Mettler offered a resolution providing for the payment of tuition by the Unorganized Territory to the Cass Lake district. The motion lost for failure to get a second. A similar motion was made several months later, but that also failed for want of a second. At the meeting in January 1956, a motion was offered by Hanson that the Unorganized Territory not pay tuition. That likewise lost for want of a second. So the matter stood until the board was enlarged in 1959. State-

ments covering the tuition were prepared by the Cass Lake district and delivered to Mettler, but they do not appear to have been submitted to the board, probably because of the impasse which had been reached by that time. After the board was enlarged in 1959 by the addition of two new elected members, and Hanson had been defeated and replaced by Mrs. Gertrude Rolfe, the board took the matter up with the Department of Education of the State of Minnesota and submitted to it a claim for payment of the state aid which would have been paid if the students attending Cass Lake either attended school in the Unorganized Territory or attended Cass Lake under an agreement with the Unorganized Territory. It was stated by the new board that the "figures were inadvertently omitted in the reports submitted from the Cass County Unorganized Territory covering these years."

After a verification of the children who had attended Cass Lake from the Unorganized Territory, the Department of Education did pay to the treasurer of the Unorganized Territory the sum of $18,149.06 for these 3 years. The board of the Unorganized Territory, as then constituted, adopted a motion that the bills of the Cass Lake district be paid "when the moneys for the payment of same was received for that special purpose from the State Department." Upon receipt of the money, the board of the Unorganized Territory adopted a resolution wherein it did "offer as a compromise settlement" to the Cass Lake district the sum so received. All except one member of the board voted in favor of the resolution. Thereafter, the Unorganized Territory paid to the Cass Lake district the amount so received from the state. Before making such payment, they were advised by plaintiff that the payment was illegal, and, after it had been made, he requested the board to commence an action to recover the money. This action was thereafter commenced against the members of the Board of Education of the Unorganized Territory, the members of the school board of the Cass Lake district, and the Cass Lake district to recover the money for the benefit of the Unorganized Territory.

During this interval tuition was paid to Cass Lake by at least one of the parents. No other tuition was ever paid for the children attending from the Unorganized Territory, but the Cass Lake superintendent of

schools stated that the Cass Lake district always expected to collect tuition for these students, although its board did not know who would pay it.

The law governing during the times here involved is to be found in the 1953 statutes.

State aid to school districts, which apparently applies to unorganized territory as well, is payable to the one who furnishes the education.[1] If the school children had been educated by the Unorganized Territory of Cass County, it would be entitled to the state aid. If it had entered into an agreement with a school district to furnish education, such school district would be entitled to the state aid. The difficulty in this case arises because the Cass Lake district furnished the education for the children of the Unorganized Territory without an agreement that such district would be paid by the Unorganized Territory.

■    Unorganized territory has existed in this state over the years in sparsely settled, rural areas where it has been impractical to form school districts and, often, to build and maintain schools. The legislature, mindful of this fact, provided for the education of children within unorganized territory by Minn. St. 1953, § 123.37, which provided in part:

"It shall be the duty of the county board of education for unorganized territory to furnish school facilities to every child of school age residing in any part of the unorganized territory, either by building school houses, leasing schoolrooms, transporting the children to the nearest school, boarding the children within convenient distance from a school at the expense of the board, or otherwise, and to provide necessary supplies and text and library books."

Under this statutory provision, it is the duty of the board of education of unorganized territory to provide for the education of children within its area in one way or another. Minn. St. 1953, § 123.39, gave to the board of education of unorganized territory powers and duties of a school board of an organized district. As far as material, it read:

"When not otherwise provided in sections 123.33 to 123.57, the

---

[1]See, Minn. St. 1953, §§ 125.06, subd. 11, 128.081, and 128.082.

powers and duties of the county board of education for unorganized territory shall be the same as those of school boards * * *."

Undoubtedly, under that authorization the board had available to it Minn. St. 1953, § 125.06, subd. 12, which read:

"It [the board] may, by majority vote, provide for the instruction of any resident pupil in another school district when inadequate room, distance to school, unfavorable road conditions, or other facts or conditions make attendance in his own district unreasonably difficult or impractical, in which case such district shall pay to the district so attended the tuition agreed upon or charged, and may provide transportation; provided, that such pupil shall continue to be a pupil of the district of his residence for the payment of apportionment and other state aids."

It is clear, however, that § 125.06, subd. 12, did not circumscribe the duty of the board of education to furnish education for its children one way or another under the mandate of § 123.37.

■ The trial court found that the board acquiesced in the education of the children by the Cass Lake school district and that, as a result, there was a constructive trust in favor of the Cass Lake school district with respect to the state aid received by the Unorganized Territory, such aid in equity and good conscience belonging to the Cass Lake district.

Acquiescence is defined in Webster's New International Dictionary (2 ed.) (1960) p. 23, as follows:

"Act or state of acquiescing; * * * passive compliance or acceptance, esp. of views, proposals, and decrees;—distinguished from avowed consent on the one hand, and, on the other, from opposition or open discontent."

In illustration, it quotes the following from Pence v. Langdon, 99 U. S. 578, 581, 25 L. ed. 420, 421:

"Acquiescence and waiver are always questions of fact. There can be neither without knowledge. The terms import this foundation for such action. One cannot waive or acquiesce in a wrong while ignorant

478

that it has been committed. * * * There must be knowledge of facts which will enable the party to take effectual action."[2]

In this case, one member of the board, Mettler, not only acquiesced but sought affirmative action by the board to enter an agreement with the Cass Lake district to pay tuition for the children which it had agreed to accept. Another member, Hanson, not only did not acquiesce but sought affirmative action against entering an agreement to pay tuition. Neither party prevailed because no one would second their motions. The third member, Jewell, first failed to support either of the other two members and was finally incapacitated to the extent that he could not act at all. It must be said that his failure to oppose the motion to enter an agreement with Cass Lake to pay for tuition when he was able to act and had full knowledge that the children were attending school at Cass Lake, to say the least, was acquiescence. It was his duty to act—one way or the other. Having knowledge of the fact that the children were receiving their education at Cass Lake and that Cass Lake expected to be paid tuition for such children—which the evidence amply sustains—it was his duty to reject such demands affirmatively if he opposed them. The net result was that a majority of the board must be held to have acquiesced in the education of these children by Cass Lake.

■ We have frequently held that, where official action is insufficient, a board or municipal corporation may ratify or adopt that which it could have done to begin with. The general rule is stated in 10 McQuillin, Municipal Corporations (3 ed.) § 29.104, as follows:

"It is a general rule that whatever acts public officials may do or authorize to be done in the first instance may subsequently be adopted or ratified by them with the same effect as though properly done under previous authority. Consequently, it is well settled that contracts which are within the scope of the corporate powers but not authorized by proper action of the municipal corporation, that is, contracts not ultra vires, may be ratified by the proper corporate authorities."

We have applied this rule in a variety of cases. In Tracy Cement

---

[2]For other definitions, see 1A Wd. & Phr. (Perm. ed.) p. 536.

Tile Co. v. City of Tracy, 143 Minn. 415, 176 N. W. 189, where many of the cases are collected, the charter of the city provided that (143 Minn. 417, 176 N. W. 189) "[e]very ordinance, order, or resolution, appropriating money, creating any liability of the city, awarding or approving of any contract for the payment of money * * * shall require a four-fifths vote of all the members of the city council." Only three of the five members were present when action was taken on a contract involving the creation of a liability of the city. Under the charter, the vote of four members was required. While upholding the doctrine of ratification, after quite an exhaustive study of the cases, a majority of this court apparently was of the opinion that the evidence was insufficient to establish ratification. We held that we could not infer knowledge on the part of the absent members of the terms of the contract and that there was no evidence of acquiescence by the council in the contract which was in fact made. We recognized the power of the council to ratify the contract if the evidence had established an intent to ratify.

True v. Board of County Commrs. 83 Minn. 293, 86 N. W. 102, involved a suit to recover the value of legal services rendered in an action brought against the sheriff in his official capacity. In the absence of the county attorney, plaintiff had taken over his duties without being hired by the county board. With respect to ratification, we said (83 Minn. 294, 86 N. W. 103):

"* * * No doubt, an unauthorized employment of this kind may be ratified by the board of county commissioners, but there was no ratification in this instance."

Schmidt v. County of Stearns, 34 Minn. 112, 24 N. W. 358, involved the employment of several doctors to fight an epidemic. It was thereafter determined that only two should be retained. Plaintiff was one of the doctors who was dismissed. Thereafter, an epidemic broke out in another district, and the county commissioner of that district authorized plaintiff to assist. The county board was aware of this fact but took no official action. We said (34 Minn. 114, 24 N. W. 359):

"* * * we are unable to see why * * * the board might not either

authorize such expenditures in advance, or thereafter recognize, ratify, and pay the same under the powers given them * * *. * * * Their ratification would so far validate what they might have authorized."

In In re Settlement of Hanson, 206 Minn. 371, 288 N. W. 706, rent and groceries were furnished to a poor person under authorization of the chairman of the board of supervisors. By statute, only the town board could make such authorization. We held that the act of the chairman could be ratified by the township board and that the ratification related back to the act and was equivalent to prior authority. We did, however, state a cautionary rule (206 Minn. 376, 288 N. W. 708):

"* * * Ratification is only effectual when the unauthorized act was done by a person professedly acting as agent of the person or body sought to be charged as principal."

In Peterson v. County of Koochiching, 133 Minn. 343, 158 N. W. 605, plaintiff attorney was hired to prosecute a case by the county attorney. Only the county board had authority to do so. We held that the act of the county attorney could be ratified by the county board.

In Wakely v. County of St. Louis, 184 Minn. 613, 240 N. W. 103, 84 A. L. R. 920, plaintiff furnished materials to the county pursuant to an agreement with an acting county commissioner. The contract was invalid because it was not entered into by resolution of the board. The court held that the county had benefited from the services and could ratify what had been done.

Johnson v. Unorganized School Dist. 159 Minn. 226, 198 N. W. 463, which is relied upon by plaintiff as a controlling case, is distinguishable on the facts. In that case plaintiff had been employed by the board of the Unorganized Territory of Cass County to transport school children for several years under written contracts. Because of the loss of school aid, the board decided to discontinue the transportation of children during the fall of 1922. It decided not to establish a route unless inclement weather made it necessary. Notwithstanding this action by the school board, plaintiff, without any notification from anyone and assuming his contract would be renewed, began transporting the children in the usual manner when school opened in September.

When he requested payment, the board refused, and this action was brought to recover on a quantum meruit basis. We affirmed the trial court's holding that there was no legal liability to pay and in doing so said (159 Minn. 227, 198 N. W. 463):

"* * * There was no request by it [the board] that the services be performed. So far as it took any corporate action, it decided that the services should not be performed. * * *

"* * * Here defendant never accepted, intentionally or otherwise, plaintiff's services. Defendant had decided that no such services would be performed by anyone."

The Johnson case is distinguishable from the case now before us in that, here, action to reject entering into a contract with Cass Lake and action to enter such contract became equally impossible because of the inability of the board to act. It did not, as in the Johnson case, take any official action to reject such contract any more than it took action to accept it.

In the case now before us there is no question that the board, as soon as it was able to act, did adopt or ratify what had been acquiesced in by at least two of the three board members. The Unorganized Territory received the benefits accruing from the acceptance of its children by Cass Lake without official sanction as far as the board itself was concerned, for the reason that the board was unable to act. Under the law, it was the duty of the board of the Unorganized Territory to provide education for these children in one way or another. It would seem that when an impasse of this kind was reached, so that the board could not or would not act at all, and someone else furnished the education which the board was legally obligated to provide, the board ought to be able to act when the impasse was removed by acknowledging the debt it owed for the services that had been furnished at someone else's expense. In other words, it could then adopt the unauthorized act and recognize its obligation to pay for it.

The state has recognized the right of the Unorganized Territory to receive these state aids. Inasmuch as the Unorganized Territory has not furnished the education upon which the state aid is based, technically it was not entitled to it. Neither was the Cass Lake dis-

trict, at least until the board of the Unorganized Territory had adopted or ratified what had been acquiesced in, because it educated the children without any agreement with the Unorganized Territory. The argument of plaintiff is that neither the Cass Lake district nor the Unorganized Territory is entitled to retain this money and that, inasmuch as the payment was made to the Unorganized Territory, the state could charge back against it the amount so received if it becomes entitled to receive state aid in the future.

As matters now stand, in view of our decision in In re Appeal of Lego v. Rolfe, 268 Minn. 483, 129 N. W. (2d) 811, which affirms the consolidations of the Unorganized Territory of Cass County with Cass Lake, Walker, or Remer school districts, there is no longer in existence any Unorganized Territory of Cass County in so far as the area involved in this case is concerned. The only detriment plaintiff has been able to point out, if Cass Lake is permitted to retain this money, is that if the Unorganized Territory was not entitled to retain this state aid it might be deducted from future state aid that it would become entitled to receive. That argument has now become moot. If, perchance, the state should seek to recover the amount so paid, which seems extremely unlikely in view of the fact that it was fully conversant with the facts of this case before the payment was made, the only one the state could now look to for repayment would be the Cass Lake district. The worst that could now happen would be that that district would have to repay it, or that the amount so received would be charged against future state aid which the Cass Lake district would become entitled to receive. Although the remote possibility that such a thing could happen exists, it is difficult to see how plaintiff could be hurt if it did happen. If the Lego case had been decided before the present case was started, it is doubtful that plaintiff would have any standing to maintain the suit at all.

We need not determine whether the trial court correctly based its decision on a constructive trust. The evidence is conclusive that the board of the Unorganized Territory acted to adopt what the majority of the board had acquiesced in to begin with. Such action was within its powers, and the payment made pursuant thereto should be upheld.

Affirmed.